Argued May 7, affirmed July 15, 1971

BOONE ET AL, *Appellants, v.* BURDEN ET AL, *Respondents.*

487 P2d 74

*Vincent G. Robeson,* Lake Oswego, argued the cause and filed a brief for appellants.

No appearance for respondents.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE, HOLMAN, TONGUE, and HOWELL, Justices.

McALLISTER, J.

This is a suit to set aside a transfer of corporate stock allegedly transferred in fraud of creditors. The trial court found that the transfer was not fraudulent and dismissed the suit. We affirm.

The complaint alleges that plaintiffs Boone and Schulz each have a judgment against defendant Burden; that Burden is insolvent; and the judgments remain unsatisfied. It also alleges that Burden owned 300 shares of stock in Inventors Development Association, Inc., and that he transferred those shares and other assets to defendant Hammerstrom without consideration. Plaintiffs also allege that Burden and Hammerstrom conspired together to defraud Burden's creditors. Plaintiffs charge that the transfer of the shares was intended to be "of an apparent effect only" and that Burden and Hammerstrom agreed the shares would be reconveyed to Burden on request. They prayed for a decree setting aside as fraudulent the transfer of the corporate shares and for other relief.

We will not attempt to recite the historical facts out of which this controversy arose. It is admitted that on March 4, 1968, plaintiff Schulz obtained a judgment against defendant Burden for $20,000 and on the same date plaintiff Boone obtained a judgment against Burden for approximately $9,000 and that both judgments were unsatisfied. It is also clear that between February 1964 and April 1967 Burden became indebted in substantial sums to the defendant Hammerstrom as a result of a disastrous attempt by Bur-

den to promote a shopping center in Casper, Wyoming, in which Sawyer Stores, Inc., owned by Hammerstrom and his family, was to be a tenant.

The record contains notes signed by Burden payable to Sawyer Stores, Inc., or Hammerstrom or both amounting to more than $42,000. It is not necessary to decide, however, how much Burden owed Hammerstrom personally since the plaintiffs concede that he owed at least $5,500. As early as 1964 Burden had guaranteed certain advances made by Hammerstrom and Sawyer Stores, Inc., in connection with the Casper project and had agreed that, if necessary, he would endorse over to Hammerstrom his stock in Inventors, Inc.

1, 2. In the early part of 1967 Burden did endorse and deliver to Hammerstrom his 300 shares of Inventors stock. We need not decide whether this transfer occurred on April 7, 1967, when the endorsement was dated or a month or so later as contended by plaintiffs. It is sufficient to say that we have carefully reviewed the evidence and are not persuaded that the purpose of this transaction was to defraud Burden's creditors. In our view the evidence tends rather to prove an attempt by Burden to prefer Hammerstrom over his other creditors and such a preference cannot be attacked in this suit. *Murray v. Wiley,* 169 Or 381, 399, 127 P2d 112, 129 P2d 66 (1942); *Maidment v. Russell,* 159 Or 653, 664, 81 P2d 136, 82 P2d 692 (1938); *Connel v. O'Connor,* 159 Or 348, 353-354, 80 P2d 542 (1938); *Bank of Hoxie v. Graham,* 184 Ark 1065, 44 SW2d 1099, 1102 (1932).

3. There is another reason why this suit must fail. There is no proof that the stock had any value at the time of the transfer or, for that matter, at any other

time. Plaintiffs offered no evidence whatever on this necessary element of their suit. The only testimony as to the value of the stock was elicited on cross-examination from the plaintiff Schulz, who had signed the stock certificates as president of Inventors, Inc. He testified as follows:

"Q What are the shares worth today?

"A I would say that practically nothing. It is a negative value in the sense that we are so far in debt.

"Q The shares are worthless then?

"A Well, I wouldn't say they are worthless as such but they aren't worth very much."

Schulz was asked what the shares were worth in April 1967, but plaintiffs' counsel objected and Schulz was not permitted to answer. As a general rule courts will not treat as fraudulent a voluntary transfer of property having no value or only nominal value. *Hall Roberts' Son, Inc. v. Plaht,* 253 Iowa 862, 114 NW2d 548, 550 (1962); *Carstens v. Morck,* 159 Wash 129, 292 P 262, 264 (1930); *Glover v. Berger,* 75 Wyo 191, 292 P2d 793, 798, 60 ALR2d 583 (1956).

We hold that because the plaintiffs failed to sustain their general burden of proof and failed entirely to prove that the property transferred had any value the decree of the lower court will be and is affirmed.